## *In re* GOULD'S WILL.

(*Supreme Court, General Term, Fifth Department.*   April 11, 1890.)

1. DOMICILE—EVIDENCE—INTENT.
   On an issue whether testator was a resident of W. or M. county at the time of his death, the evidence showed that he had made arrangements to live with certain persons in W. county for the rest of his life; that, these arrangements not proving harmonious, he removed the principal part of his effects to M. county, and took up his abode there; and that shortly afterwards he made an affidavit, in which he testified that he was a resident of that county. *Held*, that there was a well-defined purpose on the part of testator to take up a permanent residence in M. county.

2. WILLS—PROBATE—JURISDICTION OF SURROGATE.
   A surrogate can acquire jurisdiction of a proceeding for the probate of a will notwithstanding the pendency in another county of an application for letters of administration, based on the allegation that he had left no will.

Appeal from surrogate's court, Monroe county.

Mahlon J. Gould appeals from a decree admitting to probate, upon the petition of Elam A. Hatch, the last will and testament of Daniel Gould, deceased.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*John H. Camp*, for appellant.   *J. A. Stull*, for respondent.

MACOMBER, J.   Two questions arise on this appeal, namely, whether, at the time of his death, Daniel Gould was a resident of the county of Wayne or of the county of Monroe; and, *secondly,* whether the will propounded for probate was properly executed by him.   On the 17th day of May, 1887, upon the petition of Joseph Gould and others, filed that day, alleging that the deceased, Daniel Gould, was a resident of the county of Wayne, and that he had died leaving no last will, the surrogate issued to such petitioners letters of administration.   On the 18th day of May, 1887, the proponent, Elam A. Hatch, presented his petition to the surrogate of Monroe county for the probate of a last will and testament of the same Daniel Gould, which he then and there produced and filed with the surrogate; claiming that the deceased was, at the time of his death, a resident of the town of Webster, in Monroe county.   Thereupon a citation was issued by the surrogate of Monroe county, directed to the next of kin and heirs of the decedent, which was subsequently duly served. Two of the three persons who had procured letters of administration to be issued by the surrogate of Wayne county appeared, with two others, upon the return-day for the probate of the will, and contested the same upon the ground that the surrogate of Wayne county had acquired exclusive jurisdiction in the premises, and had issued letters of administration upon the estate of the decedent.   When this fact was disclosed to the acting surrogate of Monroe county, a proper adjournment was ordered by him of the proceedings pending in his court to enable the surrogate of Wayne county to determine the question of jurisdiction.   Before the surrogate of Monroe county again took up the matter, the surrogate of Wayne had, after due application, and after citing and hearing all necessary parties, revoked the letters of administration so issued by him on the 17th day of May, 1887, and denied the application for letters of administration. . Subsequently the surrogate of Monroe resumed the consideration of the proceedings in his court for the proof of the will of the deceased, when it was claimed that the testator was not a resident of the county of Monroe, but was a resident of the county of Wayne.   The surrogate very properly ruled that he would consider and decide the question of residence before he took up the question of the execution of the will.   *People* v. *Surrogate's Court*, 36 Hun, 220.   Evidence was given before him upon that question, and he has determined that the deceased was at the time of his death a resident of the town of Webster, in Monroe county, and not a resident of the town of Walworth, in Wayne county, as was claimed by the contestants.

It is abundantly established by the case that up to the summer of 1885 the decedent was a resident of, and was actually domiciled in, Wayne county. In the year 1880 he had entered into an arrangement with certain persons for his sojourn with them during the rest of his life upon certain terms, which were satisfactory to all parties. But such arrangement did not prove harmonious; and about the month of August, 1885, he determined in his own mind to change his place of residence to the town of Webster, in Monroe county, and take up his abode with certain friends. To carry out this purpose, he removed the principal part of his effects to the latter place. There seems to have been no prescribed length of time for his sojourn in the town of Webster, but, on the contrary, his acts indicated every purpose to make the same indefinite and permanent. The burden is upon the proponent to show that the deceased was a resident of Monroe county at the time of his death; and where it is shown, as was done in this case, that the established residence had been in the county of Wayne up to the year 1885, it will be presumed that such residence continued until a new one is actually acquired. *Dupuy* v. *Wurtz*, 53 N. Y. 556. The change of domicile in the summer of 1885 indicated a fixed purpose to effect permanently a new residence in the town of Webster, Monroe county; and such intention being made to appear, followed by unequivocal acts, the burden of establishing an actual residence in Monroe county was successfully borne by the proponent. *Silvey* v. *Lindsay*, 42 Hun, 120. After becoming a resident of Monroe county, the evidence is not uniform as to his own declaration and acts touching his residence. He had spent several months in Virginia, and had asserted that he had become a resident of that state, and in certain papers he was described as of Chesterfield, Va., and as of the town of Materay, in the county of Chesterfield, Va. After such change of residence to Monroe county, he received real-estate securities, in which his residence, as party of the second part, was mentioned as of the town of Walworth, Wayne county. It has been suggested by the surrogate, and the suggestion is doubtless correct, that the vacillation shown by him in his description of his residence was due to the effort on his part to avoid taxation of his personal property. At one time, as has already been mentioned, he declared his intention to become a resident of the state of Virginia; yet this purpose was never carried out. The most positive and conclusive item of evidence in the case is his own affidavit, made on the 8th day of August, 1885, which seems to have been carefully read over to him, in which he testified that he was a resident of the town of Webster, Monroe county. On the whole, we are of the opinion that there was a well-defined purpose to remove from Wayne to Monroe county, and to take up in the latter a permanent residence. The case lacks any reliable evidence to show that he subsequently changed his purpose, and resumed his former residence. We think, therefore, that the surrogate was correct in holding that the petition for the probate of the will was filed in the proper county where the decedent died.

Upon the other branch of the case very little need be said. The deceased was a bachelor, and left an estate of about $60,000. The will bears date February 25, 1885, though it is quite conclusively shown that it was not actually executed until either the 26th or the 27th day of that month. The objections to the probate of the will allege the unsoundness of the testator's mind, and of fraud and undue influence in procuring the execution of that instrument. We have searched this record in vain to find any evidence to support these allegations. Much verbal criticism has been made by the learned counsel for the appellant based upon the fact that the will was not executed at the day of its date, and that one of the beneficiaries thereunder was described as Harriet D. Gould, whose real name was Harry D. Gould. But this slight mistake is scarcely of any importance, save only that, in our judgment, it goes far to refute the suggestion contained in the case that the will was a forgery. If the scrivener and others who are thus charged with manufacturing a will had set

out to describe the children of Orson Gould, to whom the will gives a large portion of his estate, they would have been quite solicitous to get their names accurately. According to the testimony of the scrivener and other persons, the will, which was drawn after instructions given by the testator, was read over to the latter; and it is not difficult to believe that the testator, in instructing the scrivner orally in regard to Harriet D. Gould, may have been understood to say Harry D. Gould; and the testator, in turn, when the will was read to him, may have also misunderstood the name.

It is further contended by counsel for the appellant that the surrogate of Monroe county could not acquire jurisdiction, because the proceedings upon the estate in question were still pending in Wayne county, as before stated. Under sections 2475 and 2476 of the Code of Civil Procedure, it is argued that notwithstanding the revocation by the surrogate of the letters of administration theretofore issued, and a final order denying the application for letters of administration, the proceeding was not effectually dismissed, and that the estate of the decedent must still be administered in that county. But the case before the surrogate of Wayne county rested solely for its consideration upon the allegation that the decedent died in that county, and left no will. There was no application before him to grant letters testamentary upon any supposed last will and testament. The jurisdiction of the surrogate, under these sections of the Code, was limited to an inquiry whether the deceased was a resident of this county, and whether he died intestate. If it was shown before him, as it was subsequently, that the decedent left a last will and testament, the claim of the plaintiff for letters of administration must necessarily fail. The surrogate of Wayne county had not "duly exercised" any jurisdiction over the estate of the deceased, as his final decree sufficiently demonstrates. The surrogate may, by this statute, grant letters testamentary upon a last will and testament, and, in the absence of such last will, may grant letters of administration; and in either case his claim of jurisdiction, if duly exercised, cannot be interfered with by any other surrogate; but he cannot, under an application for letters of administration, admit a will to probate. We are unable to see how the order revoking the letters of administration, and denying the prayer of the petitioner, could be added unto by any clause which formerly dismissed the proceedings. The order as made left nothing pending before the surrogate. The decree of the surrogate of Monroe county should be affirmed, with costs to be paid by the appellant personally. All concur.